UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
                                              :
JANG UK KIM,                                  :
                                              :
                          Plaintiff,          :     **MEMORANDUM AND ORDER**
                                              :
            - against -                        :
                                              :
                                              :     1:05-cv-1262-ENV-JO
HO JEO SON,                                   :
                                              :
                          Defendant.          :
                                              :
----------------------------------------------------X

VITALIANO, D.J.

         Plaintiff Jang Uk Kim ("Kim"), a construction worker, brought this action on March 4,

2005 to recover for injuries he sustained while working at a building owned by defendant Ho Jeo

Son ("Ms. Son").  On June 20, 2007, Kim moved for partial summary judgment on his fifth

cause of action, a claim brought under New York Labor Law § 240(1).  Ms. Son cross-moved for

the same relief on the same claim.  For the reasons set forth below, the Court grants Kim's

motion for summary judgment on liability and denies Ms. Son's cross-motion in its entirety.

## Background

         On July 16, 2004, Kim was working at a residential structure in Flushing, New York

owned by Ms. Son.  Kim was finishing the underside of an awning above the home's front door

when the scaffolding on which he stood collapsed, throwing him to the ground.  At the time of

this incident, Kim had been working at the construction site for two weeks consecutively and for

a total of approximately four months.  More importantly, it is undisputed that the purpose of the

construction project at Ms. Son's premises was to convert a single-family residence into a three-

family residence.  At the time of the scaffolding collapse, the conversion project was nearly complete, and no one disputes that Ms. Son had insured the property as a three-family dwelling, effective June 21, 2004 – nearly one month before the incident.  Ms. Son's husband, Kyung Man Son ("Mr. Son"), who owns a plumbing company, was charged with hiring workers and contractors to perform necessary work.  He hired Architect Chon Engineering and Nova Heating and Plumbing – both owned by Sung Soo Chon, a/k/a Steven S. Chon ("Chon") – to obtain permits and perform architectural, construction, and renovation work.

The parties disagree about the precise nature of the relationship between Chon and Mr. Son, and specifically, about the role Mr. Son played in the project.  Still, it is undisputed that the scaffold which collapsed belonged to Mr. Son and had been maintained on Ms. Son's premises. Kim had erected the scaffold – he claims, with the assistance of Mr. Son – so that he could reach the awning above the front door.  Leading to the awning/front-door area was a five-step staircase.  Two of the scaffold's legs were placed next to the front door, while the other two legs were placed on the second step of the staircase.  To level the scaffolding, the legs on the staircase were propped up on cinder blocks.  No lifelines, guardrails, or other safety devices were provided to secure the legs of the scaffold.

On the day of the scaffolding collapse, an inspector had come to visit the site, and Mr. Son directed Kim to remove the scaffold's crossbar because it obstructed access to the home's front door.  When the inspector left, Mr. Son directed Kim to replace the crossbar and return to work.  Kim apparently half-listened, as he returned to work on the scaffold, but failed to replace the crossbar.  It is unclear whether Mr. Son, who testified at his deposition through a translator,

was aware that Kim returned to work on the scaffold before replacing the crossbar. The scaffold collapsed approximately three to four hours after the inspector left.

Defendant's own expert, Dr. Robert Grunes, has concluded in his expert report that the general contractor, Chon, failed "to have assured a safe workplace" and that this failure "was the cause of the accident" within the meaning of New York State's Labor Law. Stated clearly, "[i]f properly executed, the [general contractor's] obligations would have precluded the accident." Yoon Decl., Exh. C, at 11. Dr. Grunes could not, however, definitively identify the cause of the collapse:

> While it is conceivable that there may have been a contribution to lateral instability arising from the removal of the cited crossbar, it is by no means certain that it was the cause. Moreover, alternative explanations bearing on the outer and block supports, inadequately defined, may yield a basis for understanding other problems. Unfortunately, the subject scaffold structure was removed prior to our involvement in this matter . . . . *Presumptively, the scaffold collapse resulted from an improper assembly or installation.* It is inferred that the crossbar removal, described, contributed to the collapse.

Id. at 7 (emphasis added). Dr. Grunes elaborated that Mr. Son's role on the job site was unclear due to the "stark difference in testimony" between Mr. Son and Kim.

**Discussion**

I.    **Standard for Summary Judgment**

Under the Federal Rules of Civil Procedure, a court must grant summary judgment upon finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In assessing the merits of a summary

judgment motion, "the court cannot try issues of fact but can only determine whether there are issues of fact to be tried."  Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004).  In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).  If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002).  This means that the nonmoving party may not rely on "conclusory statements, conjecture, or speculation."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  Ultimately, the court is left to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

II.     **New York Labor Law § 240(1)**[1]

---

[1]  This Court's jurisdiction is based on diversity of citizenship, as the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  The parties have assumed that New York law applies by relying exclusively on New York statutes and caselaw.  Defendant makes no argument that another state's law should apply.  "[W]here the parties, without addressing the choice of law issue, cite exclusively to the law of the

New York Labor Law § 240(1), commonly called the "scaffold law," provides that:

> [a]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Section 240(1) addresses the "special hazards" inherent in above-ground construction – "those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person." Ross v. Curtis-Palmer Hydro-Elec. Co., 81 N.Y.2d 494, 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993). In enacting the scaffold law, New York's "legislature looked to employers (and later, contractors and owners) as the entities best able to control the workplace and provide for its safety." Blake v. Neighborhood Hous. Servs. of N.Y. City, Inc., 1 N.Y.3d 280, 286, 771 N.Y.S.2d 484, 803 N.E.2d 757 (2003); Rocovich v. Consol. Edison Co., 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991) (citing Zimmer v. Chemung County Performing Arts, Inc., 65 N.Y.2d 513, 520, 493 N.Y.S.2d 102, 482 N.E.2d 898 (1985); Koenig v. Patrick Constr. Co., 298 N.Y. 313, 318, 83 N.E.2d 133 (1948)) (internal quotation marks omitted). The New York Court of Appeals has instructed that the scaffold law "undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for

forum state in their briefs, the court should apply such law pursuant to 'the principle that implied consent to use a forum's law is sufficient to establish choice of law . . . .'" Monter v. Delta Air Lines, Inc., No. 00-cv-0244E, 2002 WL 1628086, at *2 n.3 (W.D.N.Y. Jun. 24, 2002) (quoting Tehran-Berkeley Civ. & Envtl. Eng'rs. v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)). Accordingly, the Court applies New York law.

which it was thus framed." Quigley v. Thatcher, 207 N.Y. 66, 68, 100 N.E. 596 (1912).

Accordingly, section 240(1) has been interpreted to impose "absolute liability." Rocovich, 78

N.Y.2d at 513. Still, section 240(1) is not an insurance statute and its "absolute liability" should

not be confused with "strict liability," *i.e.*, "liability without fault." Blake, 1 N.Y.3d at 287-88.

Liability under section 240(1) is said to be "absolute" because it may attach to a property owner:

(i) "even though the job was performed by an independent contractor over which it exercised no

supervision or control," Rocovich, 78 N.Y.2d at 513; and (ii) even though the laborer's own

negligence may have contributed to the injury. Wojcik v. 42nd St. Dev. Project, 386 F. Supp. 2d

442, 450 n.8 (S.D.N.Y. 2005); Cahill v. Triborough Bridge & Tunnel Auth., 4 N.Y.3d 35, 39,

790 N.Y.S.2d 74, 823 N.E.2d 439 (2004); see also Joblon v. Solow, 152 F.3d 55, 57 (2d Cir.

1998); Rocovich, 78 N.Y.2d at 513; Zimmer, 65 N.Y.2d at 521; Koenig, 298 N.Y. at 317.

 An injured worker suing under section 240(1) must show that: (i) the statute was

violated; and (ii) such violation was the proximate cause of the plaintiff's injuries. Fernandez v.

CMB Contracting, ___ F. Supp. 2d ___, 2007 WL 1456220, at *3 (E.D.N.Y. May 16, 2007)

(citing

Blake, 1 N.Y.3d at 284-85). Kim contends that Mr. Son and the general contractor violated the

statute by: (i) failing to adequately address the hazardous condition presented by the staircase

beneath the scaffolding; (ii) failing to find a more secure way to install the scaffolding or to

furnish a larger scaffold that could have fit on the level ground; (iii) failing to properly instruct

Kim on installation and use of the scaffolding; (iv) failing to specifically tell Kim not to use the

scaffold until the crossbar was replaced; and (v) failing to take corrective measures to prevent

further use of the scaffolding without the crossbar. Ms. Son does not dispute that the general contractor violated his statutory obligations; her own expert has conceded that the cause of Kim's injuries was the general contractor's failure to assure a safe workplace – a failure that would violate section 240(1).

Nevertheless, Ms. Son's duty under section 240(1) is nondelegable, and she may thus be held liable for her general contractor's failure to assure a safe workplace. Ms. Son attempts, in opposing Kim's motion for summary judgment, to escape liability by arguing that: (i) she is excluded from section 240(1) as a single-family homeowner; (ii) section 240(1) does not apply to the type of work that Kim was performing at the time of the incident; and (iii) Kim's failure to replace a crossbar on the scaffold was the sole proximate cause of the incident.

a.   *Exception for One- and Two-Family Residences*

While N.Y. Labor Law § 240(1) imposes a nondelegable duty on property owners to protect construction workers engaged in above-ground construction on their property, the statute specifically exempts owners of one- or two-family residences who neither direct nor control the construction work. Cannon v. Putnam, 76 N.Y.2d 644, 645, 563 N.Y.S.2d 16, 564 N.E.2d 626 (1990). In amending section 240(1) to exempt one- and two-family residences, New York's Legislature acknowledged that ordinary homeowners are rarely in a practical position to helpfully control construction on their property. Id. at 649. To the extent that section 240(1) serves an insurance-shifting purpose, the legislative amendment reflected a judgment that "(i)t is unrealistic to expect the owner of a one or two family dwelling to realize, understand and insure against the responsibility" section 240(1) imposes. Id. at 649-50 (quoting Mem. of N.Y. Law

Rev. Comm'n, Bill Jacket, L. 1980, ch. 670, *reprinted in* 1980 McKinney's Session Laws of N.Y., at 1657). The Legislature concluded that it was futile and ultimately unfair to shift the burden of insurance to ordinary homeowners, who often lack business sophistication. See Lombardi v. Stout, 80 N.Y.2d 290, 296, 590 N.Y.S.2d 55, 604 N.E.2d 117 (1992).

It is the burden of a party invoking section 240(1)'s exception for one- and two-family residences to show that the exception applies. Id. at 297. The New York Court of Appeals has instructed that the exception's applicability turns on the "site and purpose" of the subject construction work. Cannon, 76 N.Y.2d at 650; Facteau v. Allen, 293 A.D.2d 847, 847, 740 N.Y.S.2d 518 (3d Dep't 2002). The focus on purpose extends to renovations. In Lombardi, the Court of Appeals held that the "exception is not applicable . . . if [defendant's] purpose in making renovations was to prepare the house for commercial rental"; it made no difference that the structure, previously a single-family residence, was vacant at the time of the incident giving rise to liability. 80 N.Y.2d at 297. Applying the same principle in the converse, the Court of Appeals held that the exemption applied where a non-exempted three-family residence was in the process of being converted to an exempted one-family residence. Khela v. Neiger, 85 N.Y.2d 333, 337-38, 624 N.Y.S.2d 566, 648 N.E.2d 1329 (1995) (New York Labor Law § 241). These cases clearly stand for the principle that "it is the aim of the work that governs whether the building in question fits within the first prong of the statutory exemption, *not the time at which the work is completed*." Sheehan v. Gong, 2 A.D.3d 166, 169, 769 N.Y.S.2d 507 (1st Dep't 2003) (emphasis added). Stating the rule generally, if a construction project's purpose is to transform an exempted structure into a non-exempted structure, then the construction is the type

of commercial endeavor not covered by the exemption, and the structure's prior status is irrelevant.

In the instant case, it is uncontested that the purpose of the renovations on which Kim had worked was to transform a single-family residence into a three-family residence, which would be a non-exempt structure. Though the parties cite no cases on all fours with the renovation project here, the relevant New York Court of Appeals caselaw, which focuses on the purpose of renovations, compels this Court to conclude that Ms. Son's structure was clearly within the scope of section 240(1) at the time of Kim's fall. It matters not that the renovations were incomplete or that no one was yet living in the newly-constructed units. The purpose of section 240(1) is to prevent construction accidents, and construction by its nature precedes a structure becoming habitable. In applying the section 240(1) exemption to renovation work, the purpose of the renovation trumps other factors such as whether the renovation is complete or whether the owner has obtained insurance or a certificate of occupancy. This Court, therefore, rejects Ms. Son's protestations that she is exempted from liability under section 240(1).

b. *Exclusion of Routine Maintenance Work*

New York courts have held that Labor Law § 240(1) does not apply to routine maintenance work that "is far removed from the risks associated with the construction or demolition of a building and that takes place *in a non-construction, non-renovation context*." Phillips v. City of New York, 228 A.D.2d 570, 571, 644 N.Y.S.2d 764 (2d Dep't 1996) (internal citations and quotation marks omitted) (emphasis added); Nickerson v. City of New York, 309 A.D.2d 588, 588, 765 N.Y.S.2d 510 (1st Dep't 2003). In the residential realm, one New York

court has stated "that the limitations in the applicability of Labor Law § 240 apply only in *truly domestic situations*." Retamal v. Miriam Osborne Mem'l Home Ass'n, 256 A.D.2d 506, 507, 682 N.Y.S.2d 409 (2d Dep't 1998) (emphasis added). Ms. Son posits that Kim was engaged in routine maintenance work at the time of his injury, as he had been merely fixing a leak in the awning above her front door.

Ms. Son's assertion completely distorts the record. The undisputed evidence shows that Kim had been working for months at Ms. Son's building on a major renovation project. During the two weeks before the incident at issue, Kim had been working continuously on two awnings. It is also undisputed that, at the time Kim fell, neither the awning work nor the construction project was complete. This is not a case, as Ms. Son suggests, where Kim returned to her home well after the completion of construction to plug a leak.[2] Ms. Son's attempts to twist the record do not create a genuine issue of material fact for a jury. There is no triable issue about the fact that Kim's activity took place during a major renovation project; that Kim's work at the time of the incident, even assuming that it involved fixing a leak in a newly-constructed awning, was "repair" or "alteration" work as opposed to routine maintenance; and that Kim's work took place on above-ground scaffolding. This is precisely the type of activity to which section 240(1) is directed. Based on the undisputed evidence, a reasonable juror would have no choice but to find that Kim was engaged in work that falls within the scope of section 240(1).

    c.    *Recalcitrant Worker Defense*

While N.Y. Labor Law § 240(1) does not allow a defendant to raise a defense of

---

[2] In such a circumstance, section 240(1) might, though the Court need not now decide, still apply.

contributory negligence, the defendant may still escape liability by showing that the "plaintiff's own actions [were] the sole proximate cause of the accident." <u>Cahill v. Triborough Bridge & Tunnel Auth.</u>, 4 N.Y.3d 35, 39, 790 N.Y.S.2d 74, 823 N.E.2d 439 (2004). "Cases upholding the so-called 'recalcitrant worker' defense exemplify this rule." <u>Id.</u> This defense applies when the "recalcitrant worker" refuses to use a safety device after receiving specific instruction to do so. <u>Id.</u> But, critically, the recalcitrance must have been the **sole** proximate cause of the incident. <u>Id.</u>

Ms. Son contends that she is entitled to summary judgment because Kim was a recalcitrant worker as a matter of law. She specifically points to Kim's failure to follow Mr. Son's instruction to replace the crossbar on the scaffold that eventually collapsed. Ms. Son fails, however, to offer any evidence tending to show that Kim's recalcitrance was the sole proximate cause of the incident. The only admissible evidence offered by Ms. Son on this subject, the report of her expert, is precisely to the contrary. The report clearly states that Kim's recalcitrance was, at most, a contributing factor to the incident. In fact, the expert concedes that the general contractor, and not Kim, was the cause of the incident, as he had failed to secure a safe workplace. Yoon Decl., Exh. C, at 11 ("If properly executed, the [general contractor's] obligations would have precluded the accident."). Accordingly, on her own proffered proof, Ms. Son's recalcitrant worker defense fails as a matter of law.

**Conclusion**

For the foregoing reasons, plaintiff Jang Uk Kim's motion for summary judgment on his fifth cause of action, brought under New York Labor Law § 240(1), is granted as to liability, and defendant Ho Jeo Son's cross-motion is denied. The parties are hereby directed to submit a joint

pretrial order for the trial of damages and any other pending claims the parties seek to pursue by

August 13, 2007.  The trial of this matter is set for October 1, 2007 at 10:00 a.m.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 9, 2007

                                              / s / Eric N. Vitaliano
                                              ERIC N. VITALIANO
                                              United States District Judge